**DUNIGAN TOOL & SUPPLY COMPANY,**
Appellant,

v.

**P. Q. ECHOLS, Appellee.**

No. 3283.

Court of Civil Appeals of Texas.

Eastland.

Jan. 25, 1957.

Rehearing Denied March 1, 1957.

---

J. G. Harrell, Breckenridge, for appellant.

Hawkins & Dean, Breckenridge, for appellee.

GRISSOM, Chief Justice.

Dunigan Tool & Supply Company sued P. Q. Echols on a note for $812.35 executed by him on December 31, 1951. The defendant sought credit on the note for damages suffered by reason of defective bits and a wire line sold by plaintiff to defendant, the price of which defendant alleged was included in said note. A jury found that the purchase price of said bits and wire line was included in the note; that the bits were worthless; that the line was defective and worth half of the purchase price and that the note was delivered upon condition that credit would be given for such damages. Judgment was rendered for the defendant and plaintiff has appealed.

Appellant contends there was no evidence that the purchase price of the bits and line constituted a part of the consideration for the note sued upon. It says the record shows conclusively that the bits and line had been paid for before the note was

executed and that the purchase price was not included in the note. After a most careful study of the statement of facts we are forced to the conclusion that this point must be sustained. Although Mr. Echols testified that they did constitute a part of the consideration for the note, his cross-examination disclosed that he knew of no facts supporting that conclusion. Although given every opportunity to testify to facts supporting his conjecture that they were included he failed to do so. The positive testimony of defendant's witnesses and the records of the account conclusively show the price of said articles was not included in the note. Mr. Echols' testimony as to the execution of the check and note, when properly analyzed, is in accord therewith. Under these circumstances, Echols' conclusion or opinion that it was included, in legal contemplation, constituted no evidence that the price of the bits and line was included in the note.

In Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063, Irvine was arrested without a warrant. The policeman who arrested him testified in effect that under a city ordinance he had a right to arrest the plaintiff without a warrant. Our Supreme Court held that this was merely an opinion of the officer and constituted no evidence of the existence of an ordinance justifying the arrest. The court said it was the duty of the court to instruct a verdict

"though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad

and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more."

Austin v. Neiman, Tex.Com.App., 14 S.W.2d 794, 795, 796, was a suit by the banking commissioner to recover from a bookkeeper and assistant cashier of a bank for the embezzlement of the bank's money by its president with the alleged knowledge and assistance of said bookkeeper. The bookkeeper testified and definitely denied any knowledge of the dummy ledger, by means of which the embezzler had long concealed his acts. He also vigorously denied that he had admitted to bank examiners his guilty knowledge of the dummy ledger. The evidence, otherwise, conclusively showed that it was "physically impossible for Neiman not to have discovered the unlawful abstraction of the bank's funds that was being carried on for a period of several months." The trial court's finding to the contrary was disregarded and judgment for the bookkeeper was reversed and judgment was rendered against him. The court said:

"In the face of evidence indisputably showing the method by which the shortage took place, it is useless to indulge a fanciful theory that it might have occurred in another and different way. In determining whether there is any evidence to sustain a finding, we must confine ourselves 'within the field of evidence to the utmost bounds of reason which rational men of common sense might know without passing beyond the line between the field of probability and the field of conjecture.' * * *

"While trial courts are allowed a wide latitude in determining the cred-

ibility of witnesses and the weight to be given to their testimony, this does not go to the extent of permitting the testimony as to a given fact to be allowed weight when the undisputed physical facts show that it is impossible for such testimony to be true."

When the entire statement of facts is viewed without bias the undisputed evidence as to the facts, as distinguished from exploded conclusions, conclusively shows that the price of the bits and line were not included in the note. The bits were purchased on July 7, 1950, with other articles amounting to $430.10 and charged to his account on that day. On September 15, 1950, Echols paid $3,900 on his account leaving a balance unpaid of $268.09. On December 30, 1950, Echols' account amounted to $485.73 and Echols executed a note for that amount. If the bits were not paid for on September 15, 1950, their price was included in the note for $485.73 executed on December 30, 1950. The line was purchased and his account was charged therewith in the amount of $1,725.50 on April 13, 1951. It is undisputed that on July 30, 1951, Echols paid Dunigan $3,000. It is undisputed that in addition to his account, Echols then owed Dunigan the note for $485.73, with $17 interest, or $502.73. The $3,000 was applied to the payment of said note and interest, $502.73, and the balance of the $3,000, $2,497.27, was that day applied on Mr. Echols' account, paying his account in full to May 24, 1951. The note sued on was executed thereafter on December 31, 1951. It would serve no good purpose to point out in further detail all the undisputed facts and the circumstances in evidence which force us to the conclusion that the bits and line had been paid for before the note sued on was executed and that the price thereof could not have been included in the note.

Other questions presented are therefore immaterial. The judgment is reversed and judgment is rendered for appellant.